UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ORIGINAL

**Sean Sullivan**

Plaintiff,

– against –

**COMPLAINT**

**The City of New York, the State of New York, the Department of Education of the City of New York, Mr. Andrew Cuomo, Governor of the State of New York, Mr. William J. Bratton, Police Commissioner of the NYPD, Mr. Ahmed Dickerson, Ms. T. Robinson, Police Officer Christophe Ierardi, Sergeant George Greene, and Ms. Anne-Laure Gilard,**

Civil Action No.:

CV 16    2514

Defendants,

VITALIANO, J.

MANN. M.J.

The Plaintiff respectfully alleges that:

## I.    Introduction

1.    This is a civil rights action seeking monetary, declaratory and injunctive relief pursuant to the Due Process Clause of the United States Constitution, as well as Section 1983 of the U.S. Code, resulting from the wrongful and tortious acts of employees of the Department of Education of the City of New York, the Police Department of the City of New York, and the then-estranged wife of the Plaintiff. Furthermore, the individual Defendants used the inadequate and faulty systems and processes of local law enforcement to create a false paper trail fabricating an event of potential child abduction and criminal harassment of which the Plaintiff was accused but which he never actually contemplated or took steps to bring about. Accordingly, this

1

Complaint avers that New York's Domestic Incident Report ("DIR") system was poorly designed by the State of New York and that DIR reports are issued by way of faulty policies and procedures promulgated both by the State of New York and the City of New York, creating the opportunity for significant abuse of the rights of those who may be falsely accused of a domestic violence incident without affording the accused rudimentary procedurally Due Process safeguards.  As stated fully below, the Plaintiff's various Constitutional rights were violated by the specific acts of the Defendants and he thereby seeks the relief described herein pursuant to this Section 1983 action.

## II.    Parties

2.  Sean Sullivan, the Plaintiff, is an unemployed attorney residing within the jurisdiction of this Court.

3.  Defendant, THE CITY OF NEW YORK ("NYC"), was and still is a municipal corporation duly organized and existing under and by virtue of the laws of the City and/or State of New York.

4.  Defendant, THE STATE OF NEW YORK ("NYS"), was and still is one of fifty sovereign states located in the United States of America.

5.  THE POLICE DEPARTMENT OF THE CITY OF NEW YORK (the "NYPD"), was and still is an agency and/or department and/or entity of NYC duly organized and existing under and by virtue of the laws of the City and/or State of New York.

6.  NYC maintains a police department, namely the NYPD, where personnel, including, its agents, servants and employees, were hired, trained, managed, directed,

supervised, and controlled by NYC, and is thereby liable to the Plaintiff for the acts complained of herein under, among others, the theories of vicarious liability and respondeat superior.

7.  At all relevant times herein, the Defendant Police Officer Christophe Ierardi was an employee of the NYPD acting under the color of law.  Police Officer Ierardi is sued in his individual and official capacities.

8.  At all relevant times herein, the Defendant Sergeant George Greene was an employee of the NYPD acting under the color of law.  Police Officer Greene is sued in his individual and official capacities.

9.  THE DEPARTMENT OF EDUCATION OF THE CITY OF NEW YORK (the "NYDE"), was and still is a public benefit corporation, duly organized and existing under and by virtue of the laws of the City and/or State of New York

10.  At all relevant times herein, the Defendant Andrew Cuomo, was governor of the State of New York.  Governor Cuomo is sued in his official capacity.

11.  At all relevant times herein, the Defendant William Bratton, was Police Commissioner of the NYPD.  Commissioner Bratton is sued in his official capacity.

12.  At all relevant times herein, the Defendant Ahmed Dickerson, was an employee of the NYDE acting under the color of law.  Mr. Dickerson is sued in his individual and official capacities.

13.  At all relevant times herein, the Defendant T. Robinson, was an employee of the NYDE acting under the color of law.  Ms. Robinson is sued in her individual and official capacities.

14. At all relevant times herein, the Defendant Anne-Laure Gilard was the mother of the Plaintiff's daughter and is an employee of The United Nations, residing at 494 President Street, Brooklyn, New York.

15. At all times relevant herein, the named individual defendants (collectively, the "Defendants") were acting under color of law as agents, servants, employees or officers of NYC, NYS, the NYPD, and/or NYDE.

### III.    Basis of Jurisdiction

16. This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C. §§ 1331 and 1343. This Court also has supplemental jurisdiction over the claims for relief arising under New York statutory and common law pursuant to 28 U.S.C. § 1367(a) because they form part of the same controversy and derive from the same facts.

17. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of the Plaintiffs' rights under the Fifth and Fourteenth Amendments of the United States Constitution, as well as New York State statutory and common law.

18. Venue is proper pursuant to 28 U.S.C. §1391(b) in that a substantial part of the events or omissions giving rise the claims stated herein occurred in this district.

### IV.    Facts

19. On December 2, 2012, the Plaintiff was arrested in Brooklyn, New York by certain New York City Police officers outside of the home of his then-estranged wife, the

Defendant Anne-Laure Gilard, presumably pursuant to a domestic violence complaint made weeks earlier by Ms. Gilard. The Plaintiff was later charged with criminal aggravated harassment and harassment in the second degree, a violation, in New York City Criminal Court, which proceeding was transferred to an Integrated Domestic Violence Part ("IDV Court") of the New York State Supreme Court—Criminal Term in or around March 2013. During the course of these criminal proceedings, an order of protection was issued by the court prohibiting the Plaintiff from contacting Ms. Gilard under certain circumstances, but the order of protection did not extend to their daughter, A.K.S., then a five year-old girl who lived with Ms. Gilard. On June 4, 2013, the Kings County District Attorney's office conceded all of the charges made against the Plaintiff, and the criminal case against the Plaintiff was thereby dismissed by the court, the order of protection also expiring with the dismissal of that case.

20.    Later on the day of the dismissal, the Plaintiff decided to call the school where his daughter attended Kindergarten to introduce himself and perhaps set up a meeting with her teacher so that she would be aware that the Plaintiff was a part of his daughter's upbringing. The Plaintiff does not recall with whom he spoke to at the school on that day, most likely Defendant Ms. Robinson, the school secretary, but he asked that his daughter's teacher call him regarding a potential meeting regarding his daughter's progress in Kindergarten. The Plaintiff was told that the school would check with his daughter's teacher and mother and then contact him if there was a need for a meeting. In the end, the Plaintiff never met with his daughter's teacher as a result of this request.

21. Separately, later in 2013 and in early 2014, the Plaintiff commenced civil suits against, among others, the City of New York and Ms. Gilard due to his arrest and the domestic violence charges pursued against him.  Over the course of initial discovery in the federal lawsuit against the City of New York and certain municipal employees, in or around October 2014, the Plaintiff was made aware of a Domestic Incident Report that was created by the NYPD due to his telephone call to his daughter's school on June 4, 2013 referred to above.  Particularly, this Domestic Incident Report, dated June 4th and said to be entered at 19:30 hours, accused the Plaintiff of the criminal offense of "Harassment 2."  In a section of the DIR entitled "Results of Investigation and basis of action taken," it reads, "Suspect saw [Ms. Gilard] at court . . .called the school of his daughter twice to pick up his daughter."  Another section of the DIR entitled "Statement of Allegations/Supporting Deposition" reads, presumably verbatim from Ms. Gilard's statements to the police, "At 3pm I received a call from my daughter's school PS 133 informing me that my daughter's father had called the school twice saying 'my wife has told me I schold [sic] pick up my daughter today'" . . . he has never picked her from school before and is not on the blue card.  The 2 persons he spoke to are Mr. Robinson and Mr. Dickerson."  The Reporting Officer for the DIR was Defendant Police Officer Ierardi and the Supervisor Sign-off was Defendant Sergeant George Greene.

22. A Domestic Incident Report is a state –derived official form that officers of the New York City Police Department completes whenever they receive a complaint regarding a potentially criminal domestic violence incident in the City of New York.  It is designed and maintained by the New York State Division of Criminal Justice Services, an agency of NYS.  Even if there is no arrest of the accused, the NYPD manages the

6

completion of a DIR and provides the accuser with a copy of the completed DIR form. The DIR contains detailed information regarding the alleged incident of domestic violence, a statement of allegations/supporting deposition completed by the accuser, and any contact information for the accused and the accuser.

23.    As of 2011, the State of New York has unrolled an electronic database giving law enforcement officers and prosecutors throughout the State access to every DIR completed in NYS. As a result, police officers and prosecutors throughout NYS have access to DIR reports, even though they typically do not have access to certain police complaints not filed in their jurisdiction. Law enforcement is granted access to these DIR reports so that they may be aware of a person's alleged past violent conduct. Furthermore, because the accused is provided a copy of the DIR, in this case the Defendant Ms. Gilard, the accused may provide a copy of the DIR to anyone, even to parties in an unrelated civil court actions and individuals unaffiliated with law enforcement, to validate her claims of past criminal acts of the accused. Importantly, the accused is not provided a copy of the DIR when made, and as in the case of the Plaintiff for over one year, may go on with his or her life without knowing that a DIR has been filed accusing him of serious or libelous charges.

24.    In this matter, the June 4, 2013 DIR is completely false in its factual allegations: the Plaintiff did not speak to Mr. Dickerson or Ms. Robinson regarding "picking up" his daughter from school, the Plaintiff did not state to anyone at the school that Ms. Gilard asked him to "pick up" his daughter, and the Plaintiff did not take any steps to approach, or seek permission to approach, his daughter at her school. The only request made by the Plaintiff to school employees was that he be granted a

meeting with whoever was his daughter's teacher in Kindergarten. As the police officer Defendants failed to interview the Plaintiff, they were thereby integral to memorializing the lies about the Plaintiff's conduct in the June 4, 2013 DIR, an official government form that is relied upon by law enforcement throughout the State on an ongoing basis in making tactical decisions regarding those accused of misconduct in DIRs.

25. The Plaintiff and Ms. Gilard have been embroiled in divorce and child support actions in New York State courts for over five years now. In these actions, Ms. Gilard has sought financial support for their daughter from the Plaintiff but has opposed granting the Plaintiff legal custody or visitation with respect to his daughter. On August 12, 2013, after the criminal charges were dismissed, the IDV Court granted Ms. Gilard judgment for divorce in default and granted her sole custody of their daughter, "suspending" visitation for the Plaintiff without a fact-finding hearing. A final written Judgment of Divorce was issued on September 3, 2013 in default and filed with the court clerk on October 7, 2013. The Plaintiff has subsequently sought the over-turning and vacatur of these rulings. In these actions, the June 4, 2013 DIR has been available to Ms. Gilard to use to the Plaintiff's detriment in New York State court.

26. Lastly, in February 2016, Ms. Gilard sought and received a temporary order of protection from the Family Court of the State of New York, County of Kings ("Family Court"), against the Plaintiff following a phone call made by the Plaintiff to her earlier that month where he spoke to their daughter about matters of which Ms. Gilard did not approve. This order of protection extended to Ms. Gilard and their daughter until the date of a hearing at Family Court then set for March 16, 2016. Such an order of protection is typically procured by the petitioner visiting the Family Court and appearing

8

before a judge arguing for the necessity of the measure before it is issued for service on the accused. A DIR report, such as the June 4, 2013 DIR report, is the type of information about past conduct of a person subject to an order of protection that can persuade a judge of granting an order of protection without a hearing, and the Plaintiff believes that Ms. Gilard has or will use such DIR report for those purposes. In March, 2016, the Plaintiff filed a motion seeking the dismissal of Ms. Gilard's family offense action and the related order of protection with the Family Court. As of this date, it is unclear to the Plaintiff the current status of Ms. Gilard's action in Family Court.

27. Because the June 4, 2013 DIR report contains inaccurate and fabricated information, the Plaintiff's due process rights will continue to be thwarted so long as the City of New York continues to issue and maintain DIR reports in public databases without having the proper procedural safeguards to control for and diminish false and prejudicial information included in DIR reports that can be used against the accused without the Due Process entitled to all American citizens under the U.S. Constitution.

## V.    Statement of Claims

### AS AND FOR A FIRST CAUSE OF ACTION FOR THE VIOLATION OF 42 U.S.C. § 1983 DUE TO THE VIOLATION OF PROCEDURAL DUE PROCESS RIGHTS

28. The Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 to 27 above with the same force and effect as if more fully set forth at length herein.

9

29. The Police Department of the City of New York has a policy of compelling a police officer and complainant to complete a DIR whenever a police officer is called for a domestic violence incident by a complainant in New York City. As these DIRs contain solely the allegations of the accuser, does not offer the accused an opportunity to present countervailing or negating facts to the NYPD, and there being no policy of notifying the accused of the existence of the DIR, the completion and issuance of the June 4, 2013 DIR report by the NYPD violated the Plaintiff's Fifth Amendment right to procedural due process.

30. The Plaintiff has a protected legal interest to be free from false governmental stigmatization and in the right to defend himself against any criminal charges lodged against him and recorded by law enforcement. New York City's procedures with respect to DIR reports do not lead to adequate notice to the accused in violation of his Constitutional rights, nor do they provide an opportunity for the accused to correct clear errors that may be memorialized in DIR reports for extended period of times.  Though the City of New York, acting through the NYPD, as headed by Defendant Commissioner William Bratton, may have an interest in the processing and collection of DIR reports, that interest does not excuse the current inadequate and faulty procedures that fail to ensure that complete and accurate information are contained in DIR reports completed by officers of the NYPD.

31. These procedural Due Process infirmities may be cured if, among other measures, police officers were required to interview the accused, if available, before completing a DIR, if there was a section of the form where the accused were able to include countervailing facts that supplement the accused allegations, and if the accused

10

were notified of and provided copies of every DIR completed of which he or she is the subject, but the current DIR form does not call for such information, nor do there exist any policies and procedures in place governing NYPD conduct that call for these curative measures. As a result, the risk of erroneous deprivations of an accused protected liberty interests are unnecessarily high because of the flawed DIR forms and policies and procedures used in completing and issuing such DIR forms.

32. As the Defendants the City of New York, Police Officer Ierardi, Sergeant Greene, and Ms. Gilard, acting at the behest of the NYPD in completing the DIR form, have engaged in the acts described herein in creating a false and libelous DIR to the Plaintiff's detriment, and the City of New York has failed to institute constitutionally adequate legal mechanisms that could have afforded the Plaintiff notice and other safeguards respecting his procedural Due Process rights, the Plaintiff has been deprived of protected legal interests without granting him Due Process under the law and this will continue to into the future as long as the Plaintiff is not afforded the relief demanded herein.

33. The Plaintiff has a right to be free from the false stigmatization of government actors that needlessly result in adverse actions against citizens without procedural Due Process. As the Plaintiff strongly believes that the Defendant Ms. Gilard has used this June 4, 2013 DIR report as ammunition against the Plaintiff in legal controversies between the two, and in Family Court in procuring an order of protection, compelling the Plaintiff to stay away from her and his daughter, even before an adversarial hearing was held regarding her allegations in Family Court, the Plaintiff has clearly experienced adverse action resulting from this libelous June 4, 2013 DIR report.

Further, in it being disclosed to the Plaintiff in discovery for an unrelated legal action against the City of New York, the June 4, 2013 DIR report has already been used by the Defendant City of New York in an adversarial capacity to the Plaintiff in federal court. Lastly and just as importantly, the existence of this false DIR report in a statewide depository that is accessed whenever the Plaintiff may have an experience with law enforcement, impacting the tactics used by law enforcement when approaching a New York resident accused in a DIR, demonstrates how such false information is further used to the Plaintiff's detriment.

34.  Accordingly, the Plaintiff has suffered a stigma plus injury in violation of his procedural Due Process rights due to the above-described actions of the Defendants City of New York, the NYDE's employees, Defendants Mr. Dickerson and Ms. Robinson, Police Officer Ierardi, Sergeant Greene, and Ms. Gilard, such June 4, 2013 DIR memorializing the unmistakable lies of Mr. Dickerson, Ms. Robinson, Ms. Gilard and Police Officer Ierardi regarding the Plaintiff's statements and conduct, and which are accessible to law enforcement throughout New York state in a DIR database on an ongoing basis.

35.  The individual Defendants are not entitled to either absolute or qualified immunity because, among other reasons, the Due Process rights described herein were clearly established at the time of the conduct complained of and the Defendants' actions were not objectively reasonable in light of federal Due Process case law.

36.  As a direct and proximate result of the unconstitutional acts referred to above, the Plaintiff has suffered emotional distress, deprivation of his constitutional

rights, damage to his reputation, and material and economic loss, and thereby seeks compensatory damages from each of the above-named Defendants except the State of New York, from which declaratory and injunctive relief is sought.

## AS AND FOR A SECOND CAUSE OF ACTION FOR CONSPIRACY IN VIOLATION OF THE PLAINTIFF'S DUE PROCESS RIGHTS UNDER THE U.S. CONSTITUTION

37.    The Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 to 36 above with the same force and effect as if more fully set forth at length herein.

38.    Defendant Ms. Gilard took steps to accentuate the fabrications of Defendants Mr. Dickerson and Ms. Robinson, employees of the NYDE, regarding the Plaintiff's statements and conduct on June 4, 2013, and supplemented such information with her own false charges regarding the Plaintiff's conduct and intentions on that day by approaching the NYPD regarding a potential criminal case against the Plaintiff. And Police Officer Ierardi and his supervisor Sergeant Greene conspired with Ms. Gilard to further support these false charges by failing to contact or interview the Plaintiff, or engage in basic investigative acts to determine the truthfulness of Ms. Gilard's charges against the Plaintiff. Put differently, Ms. Gilard presented the NYPD with shocking hearsay evidence supplied to her by employees at the school his daughter attended comprised of nothing more than bald-faced lies and Defendants Police Officer Ierardi, and Sergeant Greene, acting under the color of law, conspired with Ms. Gilard to set in

motion a completely unnecessary DIR that Ms. Gilard may use to the Plaintiff's detriment on an ongoing basis in various legal fora, and otherwise.

39.  In all, Ms. Gilard served as ringleader and conspired with Mr. Dickerson, Ms. Robinson, Police Officer Ierardi, and Sergeant Greene to fabricate false charges and accusations against the Plaintiff that were recorded in the June 4, 2013 DIR, such false charges having been, and in the future having the potential to be, used to disadvantage the Plaintiff in his matrimonial and child custody actions against Ms. Gilard, resulting in his estrangement from his only child, and creating a false record of past domestic violence acts that could be used against the Plaintiff in a court of law or when approached by law enforcement generally.  Furthermore, this conspiracy was furthered by Ms. Gilard's procurement of a temporary order of protection in February 2013 that prevented the Plaintiff from having any contact with his eight-year old daughter.  Each of these acts resulted in a conspiracy to violate the Plaintiff's procedural Due Process rights, as he had clear liberty interests in his reputation, in his relationship as father to his daughter, and in his daughter's education.  In colluding with employees of the NYPD and NYDE, Ms. Gilard was acting under the color of law for the purposes of this action.

40.  The Defendants are not entitled to either absolute or qualified immunity because, among other reasons, the Due Process rights described herein were clearly established at the time of the conduct complained of and the Defendants' actions were not objectively reasonable in light of U.S. Constitutional Due Process principles. The City of New York and the NYDE are liable for the actions of the individual Defendants as they were acting under the color of law.

14

41.  The individual Defendants' acts imposed an immediate and ongoing harm on the Plaintiff and have caused the Plaintiff emotional distress, deprivation of his constitutional rights, damage to his reputation, and material and economic loss.


## AS AND FOR A THIRD CAUSE OF ACTION FOR THE VIOLATION OF 42 U.S.C. § 1983 DUE TO THE LACK OF SUBSTANTIVE DUE PROCESS

42.     That Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 to 41 above with the same force and effect as if more fully set forth at length herein.

43.  The Plaintiff has a right to be free from fabricated and false charges of attempting to commit or committing criminal acts against his child and then-estranged wife.  In this matter, according to Defendant Ms. Gilard, Defendants Mr. Dickerson and Ms. Robinson, each acting under the color of law, made clearly false statements about what the Plaintiff said and the Plaintiff's conduct on June 4, 2013.  Either Ms. Gilard lied to the police and in the DIR form, or Mr. Dickerson and Ms. Robinson lied to Ms. Gilard, or more likely both occurred, but whatever the combination of lies, they were all made to the Plaintiff's detriment on that day.  These kind of falsehoods and fabrications regarding crimes of moral turpitude made by government actors "shock the conscience," having led to the various actions described herein to the Plaintiff's detriment.  Since there was not any truthfulness to the remarks by the government actors, willfulness and intent to harm the Plaintiff may be inferred.

44.  Where, as here, the employees of the NYDE and the NYPD named in this
Complaint had the ability to clear up any miscommunication regarding the Plaintiff's
intentions at his daughter's school and failed to do so as law enforcement investigated
the Plaintiff due to their false and fabricated claims, which were formalized for many to
see in a faulty system of DIR reports maintained by the State of New York, such
conduct is so egregious and outrageous that it constitutes a substantive due process
violation of the Plaintiff's interests in his relationship as a father to his daughter and his
reputation.

45.  Furthermore, Police Officer Ierardi recorded false information in the DIR
about the Plaintiff's conduct, stating in a conclusory fashion, and attributable to no one
but himself, that the Plaintiff "called the school of his daughter twice to pick up his
daughter," a provably false statement.  Further, this government-issued Domestic
Incident Report, containing nothing but the lies of an accuser and others and no
statement from the accused, brings legitimacy and government sanction to the false
charges contained therein, giving the accuser government-produced ammunition to
spread lies and falsehoods about the accused in state courts, all egregious conduct in
violation of the Plaintiff's substantive due process rights.

46.  Lastly, Defendants Dickerson and Robinson took steps that resulted in the
Plaintiff being denied access to his daughter's school and her teacher without properly
investigating the child custody status of the Plaintiff's daughter.  As of the day of the
incident in question, no court of law had granted Ms. Gilard exclusive legal custody of
the Plaintiff's daughter, and the Plaintiff's right to be involved in the education of his
daughter was at least equal to that of Ms. Gilard on June 4, 2013.  The Plaintiff's right to

16

be involved in the education of his child is a fundamental legal right under the U.S. Constitution and Defendants Dickerson and Robinson, acting under the color of law, fabricated false statements attributed to the Plaintiff that unfairly obstructed the Plaintiff from exercising that right, depriving him of a Constitutionally-protected liberty interest.

47.  The Defendants are not entitled to either absolute or qualified immunity because, among other reasons, the Due Process rights described herein were clearly established at the time of the conduct complained of and the Defendants' actions were not objectively reasonable in light of Constitutional Due Process principles. The City of New York and the NYDE are liable for the actions of the individual Defendants as they were acting under the color of law.

48.  The Defendants' acts imposed an immediate and ongoing harm on the Plaintiff and have caused the Plaintiff emotional distress, deprivation of his constitutional rights, damage to his reputation, embarrassment, humiliation and material and economic loss.

## AS AND FOR A FOURTH CAUSE OF ACTION FOR MUNICIPAL LIABILITY UNDER MONELL, AS WELL AS DECARATORY AND INJUNCTIVE RELIEF AGAINST THE STATE AND CITY OF NEW YORK

49.    The Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 to 48 above with the same force and effect as if more fully set forth at length herein.

50.    Because the acts complained of herein done by Police Officer Ierardi, Sergeant Greene, and Ms. Gilard were done consistent with the policies and procedures governing the creation and issuance of DIR's as furthered by the NYPD, and because the City of the New York has a custom and policy of creating and issuing DIR's without notifying the accused and affording the accused procedural Due Process, and because NYC was deliberately indifferent to the Plaintiff's constitutional rights by failing to develop policies and procedures that would protect him from false and slanderous criminal accusations spread through its DIR electronic database and otherwise, NYC has a custom and policy with respect to DIR's that subject it to Monell liability for the damages arising from the misuse of DIRs by its agents and others, as in this matter. Defendant William Bratton is Police Commissioner of the City of New York and is thereby ultimately responsible for the policies and procedures that police officers adhere to when completing and issuing DIR reports.

51.    The State of New York has a custom and policy of devising the DIR, and its characteristics, form and content are regulated by the State of New York. As a result, the State of New York is responsible for correcting the DIR form to cure any Due Process infirmities flowing from it. The State of New York has been deliberately indifferent in devising a Constitutionally-compliant DIR and creating policies and procedure consistent with the Due Process rights of those accused of conduct subject to DIRs. In federal court, the State of New York may be held responsible for declaratory and injunctive relief when a Constitutional violated is alleged. Defendant Governor Andrew Cuomo is the chief executive of the State of New York is therefore ultimately responsible for the characteristics and administration of DIR reports.

52.  In light of the claims made herein, the Plaintiff hereby seeks declaratory and injunctive relief against the Defendants City of New York, the State of New York, Governor Cuomo, and Commissioner Bratton declaring that the DIR, as well as the policies and procedures used in completing and administering such forms, violates of the Due Process clause of the U.S. Constitution, and an injunction calling for the DIR form to be made to reflect and contain relevant and countervailing facts that an accused can bring to bear to law enforcement regarding an alleged domestic violence incident recorded in a DIR, and for policies and procedures to be developed consistent with the Due Process clause as described herein.

## AS AND FOR A FIFTH CAUSE OF ACTION FOR NEGLIGENCE AND FAILURE TO TRAIN UNDER APPLICABLE NEW YORK LAW

53.  That Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 to 52 above with the same force and effect as if more fully set forth at length herein

54.  By failing to interview the accused or anyone besides the accuser with direct knowledge of the facts contained in the DIR, the NYPD , through the acts of the Defendant Police Officers, facilitated the smear campaign spearheaded by Ms. Gilard and which benefitted Ms. Gilard in her legal actions against the Plaintiff.  As stated previously, since the accuser is provided a copy of the DIR, the accuser has the ability to use the DIR to spread lies and falsehoods about an accused without the accused having any ability to counter-act the information contained in the DIR.

55.  The Defendants Police Officer Ierardi and his supervisor Sergeant Greene negligently, carelessly and recklessly performed their police duties in that they failed to use such care in the performance of their police duties as a reasonably prudent and careful police officer would have used under similar circumstances; in that they carelessly, recklessly and negligently completed and issued the June 4, 2013 DIR without making a proper investigation of the charges contained therein; in that they violated established rules, procedures and policies, and in that they were otherwise negligent, careless, and reckless.

56.  The Defendants Mr. Dickerson and Ms. Robinson negligently, carelessly and recklessly performed their duties as employees of the NYDE in that they failed to use such care in the performance of their duties as a reasonably prudent and careful employee in New York City's public schools would have under similar circumstances; in that they, in concert with Defendant Ms. Gilard, apparently fabricated out of whole cloth, or negligently construed false statements that the Plaintiff never made to them and attributed an intention to the Plaintiff that was never conveyed to them regarding his conduct with his daughter; and in that they, including Ms. Gilard, were otherwise negligent, careless, and reckless.

57.  The events described herein, the misguided and faulty investigation into a potential crime based upon lies and recorded on a DIR form, were caused wholly and solely by reason of the negligence of the Defendants named above, its agents, servants and employees without any negligence on the part of the Plaintiff.

58. NYC and NYDE are liable to the Plaintiff for the acts complained of herein under, among others, the theories of vicarious liability and respondeat superior. Further, NYC is responsible for the faulty and inadequate policies and procedures used by the individual NYPD Defendants in completing the June 4, 2013 DIR, resulting in material injury to the Plaintiff.

59. As a direct and proximate result of the aforesaid, the Plaintiff was injured in mind and body, still suffers and upon information and belief, will continue to suffer great mental pain, pain and suffering, humiliation and embarrassment, emotional and mental distress, inconvenience, and loss of income.

## AS AND FOR A SIXTH CAUSE OF ACTION FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS UNDER APPLICABLE NEW YORK LAW

60. That Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 to 59 above with the same force and effect as if more fully set forth at length herein.

61. The individual Defendants Ms. Gilard, Mr. Dickerson, Ms. Robinson, and Police Officer Ierardi acted in a manner that exceeded all reasonable bounds of decency by engaging in acts that were likely to inflict emotional distress upon the Plaintiff since the Plaintiff would likely had been shocked by false and libelous claims made in the June 14, 2013 DIR, and, upon information and belief, a desire to embarrass him in public and subject him to further humiliation. Furthermore, Police Officer Ierardi recorded false information in the DIR about the Plaintiff's conduct, stating in a

conclusory fashion, and attributable to no one but himself, that the Plaintiff "called the school of his daughter twice to pick up his daughter," a provably false statement. Further, this government-issued Domestic Incident Report, containing nothing but the lies of an accuser and others and no statement from the accused, brings legitimacy and government sanction to the false charges contained therein, giving the accuser government-produced ammunition to spread lies and falsehoods about the accused.

62.  The Defendants NYC and NYPD are liable for the tortious infliction of emotional distress against the Plaintiff based upon the theories of respondeat superior and vicarious liability.

63.  By reason of the aforesaid, the Plaintiff suffered severe mental anguish, frustration, humiliation, embarrassment, injury to personal and business reputation, and great indignity.

## VI.    Relief Sought

**WHEREFORE**, the Plaintiff respectfully requests that this Court:

1.    Declare that the Defendants' conduct alleged herein, as well as the policies and procedures described, violate the Fifth and Fourteenth Amendments to the Constitution of the United States in the manner alleged herein, upon the evidence adduced at trial or otherwise;

2.      Declare that the State of New York's Domestic Incident Report form is defective based upon the Due Process clause of the U.S. Constitution, and order the City of New York and the State of New York to enact policies and procedures consistent with the protection of the procedural due process rights of the accused mentioned in DIR reports as complained of and described herein;

3.      Award the Plaintiff damages in an amount of no less than $1,000,000;

4.      Award the Plaintiff reasonable costs as authorized under 42 U.S.C. § 1988; and

5.      Grant such other further and different relief as the Court deems just and proper.

**I declare under penalty of perjury that the foregoing is true and correct.**

Signed this 4th day of May, 2015.

_____

Signature of Plaintiff

General Delivery
New York, New York 10001-9999
Sullivan9499@gmail.com
(347) 829-4714